# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHLEEN NISWANDER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:08-cv-1325-WTL-DML |
| | ) |
| PRICE, WAICUKAUSKI & RILEY LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY REGARDING WHETHER THE PLAINTIFFS' CASE MAY PROCEED WITHOUT EXPERT TESTIMONY

In a previous entry (dkt. no. 160), the Court overruled the Plaintiffs' objection to the Magistrate Judge's ruling barring the Plaintiffs from presenting any expert testimony regarding the applicable standard of care in this legal malpractice case. The Court then ordered the Plaintiffs to show cause why judgment should not be entered in favor of the Defendants in light of the fact that under Indiana law, "[e]xpert testimony is usually required in a legal malpractice action to establish the standard of care by which the defendant attorney's conduct is measured." *Storey v. Leonas,* 904 N.E.2d 229, 238 (Ind. Ct. App. 2009) (citation omitted). The Plaintiffs submitted a brief in response to the order to show cause, to which the Defendants have responded. Having carefully considered the arguments made by the parties, the Court has determined that the Plaintiffs will be unable to establish their legal malpractice claims against the Defendants without expert testimony on the relevant standard of care. Accordingly, the Defendants are entitled to judgment as a matter of law.

## I. FACTUAL BACKGROUND

Although many of the Plaintiffs' assertions are disputed by the Defendants, the Court will take as true the facts as alleged by the Plaintiffs for purposes of this ruling. Those allegations are

as follow.

The Plaintiffs in this action, Kathleen Niswander and Alison Pfeister, also were plaintiffs in a collective action suit against their employer, Cincinnati Insurance Company ("CIC"), for violation of the Equal Pay Act (hereinafter referred to as the "*Rochlin* action"). The Plaintiffs in the *Rochlin* action were represented by Defendant Jennifer Graham, Defendant Ronald Waicukauski, and attorney Amy DeBrota, who was at that time one of Waicukauski's law partners. On September 27, 2005, the Defendants learned that one of the named plaintiffs in the *Rochlin* action, Mary Slover, had been terminated by CIC. The grounds given by CIC for Slover's termination was that Slover had violated CIC's Code of Conduct by producing confidential CIC documents to third parties for non-business purposes. The third parties in question were the Defendants, Slover's attorneys, and the documents had been given to the Defendants by Slover and then produced to CIC in response to a discovery request in the *Rochlin* action.

The Plaintiffs aver that they were instructed by the Defendants to provide them with all of the documents in their possession related to their employment with CIC and that the Defendants would determine which were relevant and responsive to CIC's discovery requests. Indeed, apparently prior to learning of Slover's termination, DeBrota had instructed the Plaintiffs in a letter dated September 27, 2005, regarding their document production obligations as follows:

> [I]f you have **any** documents related to your employment at CIC which you have not already sent in, please send them to me immediately. I will also be sending you a letter about some specific "holes" in our discovery responses which we need to address, but I also need you to look around your house and office for any documents you think might be even remotely helpful to our case and send them in right away. If we do not produce the documents to CIC and cooperate in discovery, we will not be able to use the documents at all.

On September 30, 2005, DeBrota sent the Plaintiffs another letter, this time addressing Slover's

2

termination, explaining:

> CIC accused Ms. Slover of taking confidential and/or proprietary documents from CIC, without permission and in violation of the CIC Code of Conduct. To be honest, CIC's allegations about the nature of the documents it is concerned about are not entirely clear. I do know that Ms. Slover obtained these documents in the normal course of her duties for CIC. However, CIC contends that she was not authorized to copy and retain copies of some of the documents, including unemployment compensation documents regarding some people but which came to Ms. Slover as part of her job duties. CIC also alleges that Ms. Slover gave the documents to a third party unrelated to this lawsuit. Ms. Slover denies these accusations.

The letter also contained the following instructions:

> I want to emphasize to everyone that if you still work at CIC it is the safest course not to retain copies of documents which are not directly related to you or directly related to job duties or work that you perform. If you see a document which you think would be helpful to the case, write down the details about it, such as the title and date, and forward the information to me so I can send a document request to CIC. For those of you who may have previously saved copies of similar documents during your employment at CIC, please notify me immediately so that we can address this situation. We will still likely need to produce the documents, because I am ethically bound to do so and the Federal Rules of Civil Procedures [sic.] requires [sic.] us to cooperate fully in discovery. However, it would be best if I know about the situation ahead of time.

Following receipt of these letters, the Plaintiffs each sent documents relating to their employment with CIC to the Defendants. The task of reviewing the documents for relevance was delegated to two paralegals, one of whom testified that her review consisted of determining whether the documents related to the clients' employment, rather than whether they were relevant to the clients' Equal Pay Act claims. The paralegals were to consult with DeBrota if they had any question concerning the relevancy of particular documents. The paralegals were not given any instructions regarding the CIC Code of Conduct or the identification and treatment of confidential CIC documents.

On October 25, 2005, the Defendants produced documents to CIC in response to its

document requests to the Plaintiffs. No attorney reviewed all of the documents prior to them being produced to CIC. In early December 2005, both Niswander and Pfeister were terminated by CIC for violation of the CIC Code of Conduct for producing confidential and proprietary documents to the Defendants in the course of discovery in the *Rochlin* action.

## II. DISCUSSION

The Plaintiffs allege in their amended complaint that the Defendants owed them "a duty to exercise ordinary care and to provide [them] with legal representation with the knowledge, skill, and ability normally possessed and exercised by lawyers representing clients in employment actions" and that they "had a duty to conduct the litigation including the pre-trial discovery proceedings in a manner so as to not cause the termination of [the Plaintiffs'] employment." The Plaintiffs further allege that the Defendants breached these duties in the following respects: (1) failing to advise the Plaintiffs what documents they could produce without violating the CIC Code of Conduct; and (2) instructing the Plaintiffs to send them all documents relating to their employment with CIC and then failing to review the documents they received from the Plaintiffs to determine which of them were relevant and responsive to CIC's document requests before producing them to CIC. Finally, the Plaintiffs allege that these breaches by the Defendants caused them to be terminated by CIC.

As noted above, under Indiana law the general rule is that expert testimony is required in a legal malpractice action to establish the standard of care that applied to the defendant attorney. "The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Storey,* 904 N.E.2d at 238. The Plaintiffs make a valiant effort to fit this case under the exception. Unfortunately for the Plaintiffs, however, none

4

of the alleged actions of the Defendant so obviously fall short of the standard of care that it would be readily understood as malpractice by a juror. Whether (either generally or given the particular circumstances of this case) the Plaintiffs' attorneys had a duty to review the documents personally before producing them in discovery, or to better instruct either their clients which documents were relevant and which documents might run afoul of the CIC Code of Conduct, is simply not something within the knowledge of a layperson. Further, as acknowledged by the Sixth Circuit in Niswander's suit against CIC for retaliatory discharge, whether it was legal for CIC to terminate the Plaintiffs under the circumstances was a matter of first impression in that court, making the determination of the Defendants' duty at the time of the document production even less clear cut than it may appear in retrospect. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008).

The Plaintiffs also suggest that an admission by the Defendants obviates the need for expert testimony. In paragraph 16 of the amended complaint, the Plaintiffs alleged that the Defendants "had a duty to conduct the litigation including the pre-trial discovery proceedings in such a manner so as not to cause the termination of their client's employment." The Defendants answered as follows:

> Defendants deny the allegations set forth in paragraph 16 of the Plaintiffs' Amended Complaint to the extent that such activities would violate applicable ethical duties, codes of conduct, or other duties on lawyers, or the extent that termination may simply be a natural and probably consequence of litigation with one's employer or the employees' own conduct as a part of prosecuting the action, independent of counsel.

The Plaintiffs argue that by so answering the Defendants have admitted the existence of a duty except under certain circumstances and that "[i]it is incumbent on the Defendants" to demonstrate that those circumstances existed–that is, the Defendants must "establish some ethical

5

responsibility either under the Federal Rules of Civil Procedure or under the Indiana Rules of Professional Conduct" that required them to produce the documents in question in order to avoid liability for breach of the duty. The problem with this argument is that it improperly shifts the burden of proof from the Plaintiffs to the Defendants. It is the Plaintiffs who must prove what the applicable standard of care was and that the Defendants failed to meet that standard; it is not the Defendants' burden to disprove it. That the Defendants had a duty to the Plaintiffs is not in dispute; what that duty required the Defendants to do (or to refrain from doing) during the course of the *Rochlin* action is a question that, under Indiana law, must be answered by expert testimony, testimony that the Plaintiffs have been barred from presenting.

### III. CONCLUSION

Because the allegations in this case do not fall under an exception to the general rule under Indiana law that expert testimony is required to establish the applicable standard of care in a legal malpractice case, the fact that the Plaintiffs have been barred from presenting expert testimony is fatal to their claims. Accordingly, having given the Plaintiffs notice and a reasonable time to respond as required by FRC 56(f), and having considered the Plaintiffs' submissions, the Court now determines that the Defendants are entitled to judgment as a matter of law on all of the Plaintiffs' claims.

SO ORDERED: 06/30/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification